965 So.2d 455 (2007)
ARKEL CONSTRUCTORS, INC.
v.
DUPLANTIER & MERIC, ARCHITECTS, L.L.C., Thomas S. Meric, Jr., the State of Louisiana Through the Division of Administration, Office of Facility Planning and Control, and Schrenk & Peterson Consulting Engineers, Inc.
Professional Construction Services, Inc.
v.
Arkel Constructors, Inc. and American Casualty Company of Reading.
No. 2006 CA 1950, 2006 CA 1951.
Court of Appeal of Louisiana, First Circuit.
July 25, 2007.
*457 Murphy J. Foster, Steven B. Loeb, Yvonne R. Olinde, Baton Rouge, Counsel for Plaintiff/Appellee Arkel Constructors, Inc.
Michael F. Weiner, Daniel S. Terrell, Mandeville, Counsel for Third-Party Defendant/Appellant Professional Construction Services, Inc.
Terrence L. Brennan, New Orleans, Counsel for Defendant/Appellee Duplantier & Meric Architects, L.L.C., Thomas S. Meric, Jr., and Schrenk & Peterson Consulting Engineers, Inc.
Pamela Miller Perkins, J. Michael Lamers, Allen Harvey, Baton Rouge, Counsel for Defendant/Appellee State of Louisiana Through Division of Administration, Office of Facility Planning & Control.
Richard E. King, David M. Moragas, New Orleans, Counsel for Defendant/Appellee Maryland Casualty Company.
Before: PETTIGREW, DOWNING, McCLENDON, HUGHES and WELCH, JJ.
DOWNING, J.
This dispute arises out of a construction project in Baton Rouge for work on the Louisiana Department of Environmental Quality's Laboratory Building. The issues before us concern: (1) the appealability of the trial court's judgment denying the motion to compel arbitration; (2) whether the trial judge, rather than the arbitrator, has the authority to determine if the party requesting arbitration is in "default" and; finally, (3) whether the trial court erred in finding that Professional Construction Services, Inc. (PCS), the requesting party herein, was in default and waived arbitration by filing suit without reserving its rights to arbitration.

BACKGROUND FACTS
Arkel Constructors, Inc. (Arkel), the general contractor, filed suit in March 2005 against the State as owner of the project, the structural engineering firm, the architectural firm, and various insurers, alleging that its performance on the project had been delayed due to defective drawings and specifications and improper administration regarding the installation of vinyl sheet piling. The subcontractor responsible for the vinyl sheet piling installation, PCS, was not a named defendant in Arkel's suit. However, in September 2005, PCS filed a separate suit against Arkel and its surety to recover monies allegedly owed to it by Arkel pursuant to its performance of the contracted work. The two suits were consolidated by consent judgment in February 2006.
Shortly thereafter, PCS filed an exception of prematurity and a motion to compel arbitration and to stay proceedings pending arbitration. PCS asserted that Arkel, as general contractor, entered into a contract with PCS, as subcontractor, and that contract contained an agreement to arbitrate any disputes that might arise under, *458 or are related to, the subcontract for the performance of the work on the project. PCS urges that the arbitration clause in the contract with Arkel is clear and unambiguous and the claims of both parties seek compensation and/or damages as a result of the work under the subcontract; therefore, the matter must be submitted to binding arbitration.
Arkel, without denying the existence or applicability of the arbitration clause in the subcontract with PCS, opposed the motion, urging that PCS, in filing its own suit on the contract without asserting the arbitration clause or its right to arbitrate the dispute had, in effect, waived its right to arbitration. At a hearing held in May 2006, the trial court ruled, first, that PCS was in "default" for having filed its suit without asserting its right to arbitration. The trial court also held that, upon finding that PCS was in "default," the court, and not the arbitrator, is the proper party to determine the issue of whether arbitration had been waived. The trial court then ruled that PCS had waived its right to arbitration.
PCS appeals the ruling denying the motion to compel arbitration and denying its exception of prematurity. Specifically, PCS asserts the trial court erred in deciding the issue of waiver, which it claims is for the arbitrator to determine. Alternatively, PCS asserts the trial court erred in determining that PCS was in "default" and that its actions constituted a waiver to its right to arbitration.

APPEALABILITY
This court, on its own motion, noting that the judgment appealed appears to be a non-appealable ruling, previously issued a rule to show cause why the appeal should or should not be dismissed. This rule was referred to this panel, to be ruled on at this time.
The ruling denying arbitration appears to be, by definition, an interlocutory ruling  one that does not determine the merits, but only preliminary matters in the course of the action. LSA-C.C.P. art. 1841. Pursuant to LSA-C.C.P. art.2083, as amended by 2005 La. Acts, No. 205 § 1, effective January 1, 2006, which removed the provision that interlocutory judgments that "may cause irreparable harm" are appealable, now provides an interlocutory judgment is appealable only when expressly provided by law.
Cases decided prior to the aforementioned amendment to LSA-C.C.P. art. 2083 consistently held that rulings denying a motion to compel arbitration were immediately appealable. In Collins v. Prudential Ins. Co. of America, 99-1423, p. 6 (La.1/19/00), 752 So.2d 825, 829, our supreme court held that an order compelling arbitration was not appealable. However, the court specifically noted in that opinion that Section 16 of the Federal Arbitration Act directs that orders denying arbitration would be immediately appealable. The supreme court reiterated that holding in Aguillard v. Auction Management Corp., 04-2804, 04-2857, p. 5 n. 5 (La.6/29/05), 908 So.2d 1, 6 n. 5: "A judgment denying a request for arbitration has been held to be an appealable, interlocutory order." (Emphasis added.) See also Shroyer v. Foster, 01-0385, p. 3 n. 4 (La.App. 1st Cir.3/28/02), 814 So.2d 83, 86 n. 4, citing Collins, 99-1423 at p. 8, 752 So.2d at 830, and Stadtlander v. Ryan's Family Steakhouses, Inc., 34,384, pp. 2-3 (La.App. 2nd Cir.4/4/01), 794 So.2d 881, 884-885, writ denied, 01-1327 (La.6/22/01), 794 So.2d 790. These cases were based on the implicit reasoning that to deny an immediate appeal of a motion denying arbitration would cause irreparable harm to the party asserting its contractual right to arbitration. With the omission of this language *459 in the amended version of LSA-C.C.P. art.2083, an immediate appeal of an interlocutory ruling must be specifically provided by law. In the absence of legislation expressly authorizing an appeal of an interlocutory judgment, a party must now seek review under the appellate court's supervisory jurisdiction. LSA-C.C.P. art. 2083, Comments-2005 (a)(b).
In a decision rendered by this court after the effective date of the amendment to LSA-C.C.P. art.2083, we again reiterated and applied the holding in Aguillard, that a judgment denying a request for arbitration is an appealable, interlocutory order, without any mention of the amendment to LSA-C.C.P. art. 2083. Johnson v. Blue Haven Pools of Louisiana, Inc., 05-0197, p. 4 n. 1 (La.App. 1st Cir.2/10/06), 928 So.2d 594, 596 n. 1. In our most recent decision concerning an appeal of the denial of a motion to compel arbitration, this court merely addressed the merits of the issues before it, without mentioning the interlocutory nature of the judgment before it, nor addressing the issue of appealability. Lafleur v. The Law Offices of Anthony G. Buzbee, P.C., 06-0466 (La. App. 1st Cir.3/23/07), 960 So.2d 105. However, in Wooley v. Amcare Health Plans of Louisiana, Inc., 05-2025, p. 10 (La.App. 1st Cir.10/25/06), 944 So.2d 668, 674, we held that Act 205, which amended LSA-C.C.P. art. 2083, was procedural and should be applied retroactively. It appears clear that the amendment to LSA-C.C.P. art. 2083 now prohibits an immediate appeal from a motion denying a request for arbitration, despite any contrary indications in the jurisprudence.
Moreover, this matter warrants the exercise of our supervisory jurisdiction. The record reveals that PCS filed its notice of appeal well within the thirty days allowable to seek writs. Moreover, to deny review at this time would force PCS to litigate an entire matter before exercising its opportunity to appeal the decision to deny arbitration; which, if successful, would render the entire litigation futile. Finally, we are mindful of the strong public policy, both in Louisiana and nationally, favoring arbitration and the enforcement of arbitration agreements. Lafleur, 06-0466 at p. 4, 960 So.2d 110, Snyder v. Belmont Homes, Inc., 04-0445, p. 4 (La. App. 1st Cir.2/16/05), 899 So.2d 57, 61, writ denied, 05-1075 (La.6/17/05), 904 So.2d 699. All of these factors support, in the interest of judicial economy, our converting this appeal into an application for supervisory writs, which we hereby consider. See State, Dep't. of Social Services v. Howard, 03-2865, p. 2 n. 1 (La.App. 1st Cir.12/30/04), 898 So.2d 443, 444 n. 1

STANDARD OF REVIEW
The determination as to whether to stay or compel arbitration is a question of law. The standard of appellate review for questions of law is simply to determine whether the trial court was legally correct or incorrect. Johnson, 05-0197 at p. 5, 928 So.2d at 597.

PUBLIC POLICY FAVORING ARBITRATION
The positive law of Louisiana favors arbitration, and any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration. Aguillard, 04-2804 at p. 6, 908 So.2d at 7. Such favorable treatment echoes the Federal Arbitration Act (FAA), 9 U.S.C. § 1, et seq., which unquestionably embodies a liberal federal policy favoring arbitration agreements. Id. at p. 7, 908 So.2d at 7-8. One of the basic reasons for the existence of arbitration agreements is to allow the parties to achieve speedy settlement of their differences out of court. This purpose would be thwarted if, before being *460 required to perform under the arbitration agreement, parties were permitted to litigate in order to secure an initial judicial determination (preliminarily to arbitration) that procedural formalities of the agreement have been complied with. Bartley, Incorporated v. Jefferson Parish School Board, 302 So.2d 280, 283 (La.1974).

APPLICABLE LAW
This matter is governed by Louisiana's Binding Arbitration Law, LSA-R.S. 9:4201 et seq. As our courts have stated many times, the starting point for the interpretation of a statute is the language of the statute itself. International River Center v. Johns-Manville Sales Corporation, 02-3060, p. 2 (La.12/3/03), 861 So.2d 139, 141. Where suit is brought prior to the invocation of the arbitration clause, as was done in this case, LSA-R.S. 9:4202, entitled "Stay of proceedings brought in violation of the arbitration clause" applies:
If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration.
(Emphasis added). Thus, once a party applies for a stay (pending arbitration), and shows (1) that there is a written arbitration agreement, and (2) the issue is referable to arbitration under that arbitration agreement, as long as that party is not in default in proceeding with the arbitration, the court shall stay the trial of the action in order for arbitration to proceed. When a party defaults prior to a suit having been filed, LSA-R.S. 9:4203 provides that the court, upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not at issue, the court shall issue an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.
As noted by the supreme court in a case squarely addressing the issue herein, "Section 4203 makes clear that the only two issues with which the trial court may concern itself are (1) whether there is a dispute as to the making of the agreement and (2) whether a party has failed to comply with the agreement. If the trial court determines that those two facts are not in issue, the court `shall issue an order directing the parties to proceed to arbitration.'" International River, 02-3060 at p. 4, 861 So.2d at 142. In the instant case, there is no dispute (or denial by Arkel) that an arbitration agreement exists, nor that the issue related to the performance of the subcontractor is referable to arbitration. In International River, the same circumstances were presented, and the court addressed the exact issue before us in this matter: "which entity determines whether a contractual arbitration agreement has been waived by a party's actions  the courts or an arbitrator." Id. at p. 1, 861 So.2d at 140. Citing the foregoing detailed sections of Louisiana's Binding Arbitration Law, the court concluded, "[n]either statute allows the trial court to determine waiver issues." Id. at p. 4, 861 So.2d at 142. The court held, "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator to decide. So, too, the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." Id. at p. 7, 861 *461 So.2d at 143-44 (Emphasis added). In so holding, the supreme court relied on and cited its earlier decision in Bartley, wherein it held, "[t]he issues of waiver and prematurity address themselves to the arbitrator. They cannot be utilized to prevent the aggrieved party from securing an order directing arbitration, as required by Section 4203." Bartley, 302 So.2d at 283. See also Aguillard, 04-2804 at p. 24, 908 So.2d at 18.

DECREE
In this case, there is no dispute that an arbitration agreement exists between the parties or that the subject matter in dispute involves the work involved between the contracting parties. Thus, having established before it the existence of an arbitration agreement covering the issues raised by the parties, the trial court erred as a matter of law in determining the waiver issue, which, for all the reasons detailed herein, is clearly a function of the arbitrator. Accordingly, we reverse the judgment of the trial court and render judgment granting a stay pending arbitration, and order the parties to submit to arbitration. Costs of this appeal are assessed to Arkel Constructors, Inc.
REVERSED AND RENDERED.
HUGHES, J., dissents with reasons.
McCLENDON, J., dissents and assigns reasons.
HUGHES, J., dissenting.
I respectfully dissent from the majority opinion insofar as it reverses the district court's determination that Professional Construction Services, Inc. (PCS) waived its right to arbitration pursuant to the parties' prior contract, grants a stay of the district court proceedings pending arbitration, and orders the parties to submit to arbitration.
In the instant case, PCS filed suit on September 13, 2005 in the district court seeking money damages in its favor arising out of a dispute under the contract between the parties. Thereafter, on November 14, 2005, Arkel Constructors, Inc. (Arkel) filed a "Motion to Transfer and Consolidate Cases for Trial," which was served on PCS. A hearing on this motion was set for January 30, 2006. The parties entered into a consent judgment on February 24, 2006, agreeing to transfer and consolidate for trial in the district court its own suit with that filed by Arkel. Thus, rather than seek arbitration, PCS agreed to have these matters heard in District Court. These actions indicate an intention to litigate rather than arbitrate. It was not until April of 2006 that PCS filed its "Exception of Prematurity and Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration." Under the circumstances, the district court found as a matter of fact that PCS, the party seeking arbitration and a stay, was in default in proceeding with the arbitration by seeking relief through litigation without reserving its right to arbitration.
This case differs from International River Center v. Johns-Manville Sales Corporation, XXXX-XXXX, (La.12/3/03) 861 So.2d 139. In that case, the party seeking arbitration was not in default. Here, Arkel did not refuse to arbitrate. Rather, PCS chose and agreed to litigate, thus defaulting on and waiving its prior arbitration agreement.
Under this appellate court's manifest error standard of review, I respectfully submit that we are unable to say that the factual finding by the district court, that PCS was in default and effectively waived its right to arbitration, is erroneous.
McCLENDON, J., dissenting.
Although, under our current jurisprudence, waiver of arbitration is generally an *462 issue to be decided by the arbitrator, our legislature, by enacting LSA-R.S. 9:4202, clearly chose to maintain the court's authority to determine whether a party applying for a stay of proceedings pending arbitration has defaulted, and thereby lost the right to stay the court proceeding and compel arbitration. Further, I do not find the holding in International River Center versus Johns-Manville Sales Corporation, XXXX-XXXX (La.12/3/03), 861 So.2d 139, to be in conflict with this analysis.
In International River, the defendant, applying for the stay of proceedings pending arbitration, was not the party in default. That is, the defendant was not the party who had refused or failed to perform under the written arbitration agreement. The supreme court found that plaintiff, who had sued various parties and pursued the matter for some time before the defendant asked for a stay, was in default. Thus, the supreme court specifically stated that the stay should have been granted.[1]
Clearly, the legislative goal of La. LSA-R.S. 9:4202 was to prevent parties, who forego arbitration and chose to pursue others through the judicial process, from changing their plan mid-suit and deciding arbitration would be more advantageous, to the prejudice of defendants who were willing to arbitrate. Only when a stay is asked for does the statute come into play, and even then only to the extent necessary to determine whether the applicant refused or failed to perform under the arbitration clause such that a default has occurred.
It appears that the applicant for the stay in our case, who behaved similarly to the plaintiff in International River, may have been in default. Thus, the trial court had jurisdiction under La. LSA-R.S. 9:4202 to determine whether the applicant's actions did indeed amount to default. Further, I do not believe that the trial court's refusal to grant the applicant's stay based on said default was erroneous under the circumstances presented herein. Therefore, I believe that the judgment of the trial court should have been affirmed.
NOTES
[1] To the extent that the majority herein interprets International River to remove from the trial court the issue of default under La. R.S. 9:4202, I believe the majority to be incorrect.